# THE MAYOR OF WASHINGTON
## vs.
## BARNES.

The power to lay a tax on commerce in the form of a tonnage duty on vessels is vested in Congress alone; hence an ordinance of the corporation of Washington which, under the name of "harbor fees," imposes such a duty on vessels coming to its port is void.

Decided October 24, 1867.

CERTIORARI to a justice of the peace to review a judgment rendered against the defendant for the amount of certain harbor fees sued for by plaintiff.

THE CASE is fully stated in the opinion.

MESSRS. BRADLEY & BRADLEY, for plaintiff.

MR. R. S. DAVIS, for defendant.

MR. JUSTICE WYLIE delivered the opinion of the Court:

This case comes before us on *certiorari* to F. A. Boswell, one of the justices of the peace of this city, who has rendered judgment against the plaintiff in error for the amount of certain harbor fees sued for by the corporation under the following ordinance:

"*Be it enacted,* &c., That Section 2 of the act entitled 'An act for the appointment of a harbormaster and for other purposes' be so amended that the harbor fees to be collected by the harbormaster shall be as follows: On all vessels of 50 tons and under, 50 cents," &c.

The plaintiff in error, of the sloop Nautilus, a vessel of less than 50 tons burden, engaged in the coasting trade, and although the judgment against him was for the small

amount of 50 cents and costs, yet he has considered it his duty to bring the case before us for the purpose of testing a question which is of general concern to all vessels visiting this port. Section 10 of Article I of the Constitution of the United States declares: "No State shall, without the consent of Congress, lay an import, or duties on imports or exports, except what may be absolutely necessary for executing its inspection laws; and the net produce of all duties and imports laid by any State on imports or exports shall be for the use of the Treasury of the United States, and all such laws shall be subject to the revision and control of Congress."

It further declares that "no State shall, without the consent of Congress, lay any duty on tonnage," &c.

The first question for our determination is whether these "harbor fees," as they are called in the corporation law, are duties of tonnage which the corporation is prohibited from collecting without the consent of Congress.

In the English law *tonnagium* (tonnage) was a custom or impost upon wines and other merchandise exported or imported according to a certain rate per ton (Bouvier's Law Dict., citing Spellman). Tonnage and poundage were ancient duties levied upon every ton of wine and ton of other goods imported and exported, and were the origin of customs. They commenced in England about the 21st of Edward III (1346). They were granted to the kings of England for life, beginning with Edward IV. At the beginning of his reign, Charles First gave great offense by levying them on his own responsibility. They ceased in 1789 (Hayden's Dic. of Dates).

Blackstone says: "Tonnage was a duty upon all wine imported over and above the prisage and butterage aforesaid. Poundage was a duty imposed *ad valorem* at the rate of 12d per pound on all other merchandise whatever." But he adds, these distinctions are now in a manner forgotten,

except by the officers immediately concerned in this department; their produce being in effect blended together under the first denomination of customs (1 Com., 315).

Worcester, quoting the Quarterly Review, says: "The custom house duties, or, as they are called, tonnage and poundage, has, since the time of Henry VI, been granted to successive sovereigns for life. The ancient meaning, therefore, of duty of tonnage which applied only to wines imported according to a certain rate per ton at the time of the formation of our Constitution had been lost, and a duty on wines by the ton was no longer designated specially by that term, but as Blackstone says, had become blended with poundage, under the first denomination of the customs."

The modern meaning of the word "tonnage" is given correctly in Wheaton's Law Dictionary. (See Bouvier's Law Dict., Maritime Law): "The capacity of a ship or vessel. The duties paid on the tonnage of a ship or vessel are also called tonnage."

Story, in his commentaries on the Constitution, also employs the word in this sense, and does not even refer to any doubt whatever as to the meaning of the term, but quotes the Constitution (incorrectly indeed) as employing the term "duty on tonnage" instead of "duty of tonnage."

Many acts of Congress are to be found, some of them now in force and others repealed, which contain legislation on the subject of tonnage duties, or duties of tonnage, and these all without exception, it is believed, have used these terms as meaning a tax imposed upon a vessel in proportion to its burthen.

It is manifest, also, both from the context of these words in the Constitution itself, as well as from the debate upon them at the time they were before the convention, that it was the intention of the framers of the Constitution that Congress should have the right of exclusive legislation over this whole subject, both as to the tax on imports and ex-

ports, as well as over the vessels employed in their transportation.

It would have been gross inconsistency in the Constitution had it conferred on Congress the right of exclusive legislation as to duties on imports and exports, and left to the several States the right to lay taxes on the vessels engaged in the conveyance of those imports and exports.

It follows, therefore, that the ordinance in question is a violation of the Constitution of the United States, unless it can be shown that Congress has by some act plainly authorized the corporation of Washington to levy a "duty on tonnage."

It is admitted that such power is nowhere expressly granted.

But the power is supposed to have been conferred by implication from the provisions of the charter of 1820, or from some one of them.

"To preserve the navigation of the Potomac and Anacostia rivers, adjoining the city."

"To erect, repair and regulate public wharves, and to deepen creeks, docks, and basins."

"To regulate the manner of erecting and the rates of wharfage at private wharves."

"To regulate the stationing, anchorage, and moving of vessels."

And the following in section 8 :

"And to pass all laws which shall be deemed necessary and proper for carrying into execution the powers vested by this act in said corporation or its officers."

We think it too plain for much argument, that the powers in question are not to be found in either or all of these grants. The charter contains other provisions designating clearly what powers over, and what subjects of satisfaction shall belong to the corporation. From and by these alone it must collect the funds with which to carry on the city

*30*

government and discharge its duties to the public. The power to lay a tax on commerce in the form of a duty on tonnage, has never been parted with by Congress to any of the States, and we find no ground whatever to believe that it has ever been granted to the corporation of Washington.

The fact that the tonnage of all vessels coming to this port imposed by this ordinance are insignificant in amount in any one instance, and is called "harbor fees" can have no influence whatever on the decision of the question. The tax is substantially a duty notwithstanding it is called by a different name, and if it is small at present, and the right be sustained by the Court, it may be increased hereafter to an extent regulated only by the discretion of the authorities of the city. The judgment of the justice must be reversed.